1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE EASTERN DISTRICT OF CALIFORNIA

10   CINDY SOUDERS,

11            Plaintiff,                      No. CIV S-05-1638 GGH

12        vs.

13
     JO ANNE B. BARNHART,
14   Commissioner of
     Social Security,
15
              Defendant.                    ORDER
16   _____/

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits

19   ("DIB") under Title II of the Social Security Act ("Act").  For the reasons that follow, the court

20   denies plaintiff's Motion for Judgment on the Pleadings or Remand, and grants the

21   Commissioner's Cross Motion for Summary Judgment.  The Clerk is directed to enter judgment

22   for the Commissioner.

23   BACKGROUND

24            Plaintiff, born July 31, 1969, applied for disability benefits on December 11,

25   2002. (Tr. at 43.)  Plaintiff alleged she was unable to work since June 15, 2001, due to depression

26   and inability to concentrate at work.  (Tr. at 43, 56.)  Plaintiff's date last insured was June 15,

                                                  1

2001.  Accordingly, plaintiff had to prove she was disabled on or before that date.  See, e.g.,

Flaten v. Secretary of HHS, 44 F.3d 1453, 1461 (9th Cir. 1995).  In a decision dated March 7,

2005, ALJ Mark C. Ramsey determined that plaintiff was disabled only as of December 11,

2002.[1]  The ALJ made the following findings:

> 1.  The claimant has not performed any substantial gainful activity since June 15, 2001.
>
> 2.  On, and prior to June 30, 2001, the claimant did not have a severe impairment.  As of December 11, 2002, the claimant's impairments which are considered to be "severe" under the Social Security Act are bipolar and anxiety disorders.
>
> 3.  On, and after December 11, 2002, the claimant's allegations are found to be credible.

\\\\\

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.

Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id

1          4.       On, and after December 11, 2002, the severity of the
claimant's mental impairment, meets the severity

2                    contemplated by 12.04(A)(B) of the Listing of Impairment,
Appendix 1, Subpart P, Regulations No. 4.

3

4          5.       The claimant has been under a disability as defined by the
Social Security Act and Regulations on, but not prior to,
December 11, 2002.

5

6 (Tr. at 17.)

7         As a result, plaintiff was found ineligible for Title II benefits as her date last

8 insured was June 30, 2001, but entitled to receive Title XVI benefits as of December 11, 2002.

9 ISSUES PRESENTED

10         Plaintiff has raised the following issues: A.  Whether Plaintiff's Depression

11 Relates Back to June 15, 2001, Her Alleged Disability Onset Date; and B.  Whether Remand for

12 Testimony of a Medical Advisor Regarding the Disability Onset Date is Required.

13 LEGAL STANDARDS

14         The court reviews the Commissioner's decision to determine whether (1) it is

15 based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

16 the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

17 Substantial evidence is more than a mere scintilla, but less than a preponderance.  Saelee v.

18 Chater, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might

19 accept as adequate to support a conclusion.'"  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct.

20 1420 (1971), quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206

21 (1938).  "The ALJ is responsible for determining credibility, resolving conflicts in medical

22 testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir.

23 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

24 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

25 Thomas v. Barnhart, 278  F.3d 947, 954 (9th Cir. 2002).

26 \\\\\

1 ANALYSIS

2    A.  Whether Plaintiff's Depression Relates Back to June 15, 2001, Her Alleged Disability

3 Onset Date

4          Plaintiff argues that she had depression as of June 15, 2001, which was prior to

5 her last insured date of June 30, 2001, and thus should receive DIB.  Plaintiff has set forth a

6 summary of medical records prior to December 11, 2002, which she claims support her

7 contention for disabling depression between June 15, 2001 and December 11, 2002.

8          An assessment by Dr. Rajappa of Guest House indicated moderate depression on

9 October 13, 2001, with a GAF of 50,[2] and a GAF in the past year of 60.[3]  (Tr. at 97, 101.)   At

10 this time, plaintiff reported that she was homeless and had not sought continuous treatment due

11 to lack of insurance.  (Tr. at 96.)  Plaintiff also visited this Sacramento County Mental Health

12 Clinic on June 15 and July 9, 2002.  (Id. at 92, 93.)  Her GAF score was again 50.  (Id. at 93.)  At

13 this time, Dr. Han opined that plaintiff appeared to want medication as a quick fix, but he

14 stressed that she needed to return for follow-up, and medications were not a quick fix.  (Id. at

15 94.)

16          Plaintiff was also assessed by Human Resources Consultants[4] on July 11, 2002.

17 Diagnosis was major depressive disorder, recurrent, moderate.  (Id. at 123.)  Plaintiff reported

18 \\\\\

19

20    [2]  GAF is a scale reflecting the "psychological, social, and occupational functioning on a
hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental
21 Disorders 32 (4th ed.1994) ("DSM IV").  According to the DSM IV, a GAF of 41-50 indicates:
"Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR
22 any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to
keep a job)."
23
    [3]  According to the DSM IV, a GAF of 60 indicates moderate symptoms such as flat
24 affect, circumstantial speech, occasional panic attacks, or moderate difficulty in functioning as in
few friends or conflicts with peers or co-workers.
25
    [4]  Human Resources Consultants, HRC Mental Health Clinic, and Guest House are all
26 clinics run under the auspices of Sacramento County Mental Health.

1    that her treatment had begun one year ago at Guest House.[5]  (Id.)  Although plaintiff had been

2    prescribed Effexor[6] by the psychiatrist there on October 13, 2001, she reported that as of July 11,

3    2002, she had only been taking it two weeks, and did not think it was working.  (Id. at 97, 124.)

4    GAF score at this time was 50 to 55.  (Id. at 188, 127.)  Plaintiff was also taking Ambien at this

5    time.[7]  (Id. at 184.)

6          Plaintiff was also seen by her primary care doctor between April 30, 2001 and

7    November 20, 2002.  Most of the records reflect physical, not mental problems.  On April 30,

8    2001, plaintiff reported that she was not depressed.  (Id. at 167.)  One month later, plaintiff

9    reported that she was depressed, and was unable to keep a job for 18 years.  (Id. at 166.)

10    Although the practitioner made a single word notation of depression on May 24, 2001, he did not

11    prescribe any treatment for it.  (Id.)  A note in February, 2002 lists depression.  (Id. at 147.)

12    There are several other entries for physical problems between April 30, 2001 and November 20,

13    2002; however, only a couple of visits indicate depression as the reason for the visit.  (Id. at 148,

14    154, 155, 157, 158, 161.) (twitching eye, foot pain, allergies, heel pain, left shoulder pain, head

15    lice.)

16          Plaintiff was seen only a handful of times for depression during the time period

17    prior to the December 11, 2002 onset date.  Only one of these visits was prior to October 13,

18    2001, and its purpose was primarily for treatment of plaintiff's left foot.  In fact, plaintiff was not

19    given a prescription or treatment plan for depression at this time.  (Id. at 166.)  Furthermore, four

20    of the five visits during this time period were at clinics run by Sacramento County Mental

21

22      [5]  The records do not support this statement as plaintiff's visits in the previous year were limited to those outlined in the previous paragraph.

23      [6]  Effexor is prescribed for depression.  www.pdrhealth.com.  Ambien is prescribed for

24    insomnia.  (Id.)

25      [7]  Plaintiff refers to notes of suicidal ideation in the record at tr. 194; however, this page states that plaintiff was *not* feeling suicidal at this time.  See Plaintiff's Mtn. at 4:9-10.  The court

26    did not see any other references to suicidal ideation in the record.  See tr. at 96 (plaintiff denied suicidal ideation or suicide attempts on October 13, 2001.)

Health, indicating that plaintiff could have received regular and consistent treatment here, despite

any lack of insurance or homelessness.

Furthermore, the fact that plaintiff could not afford medical care does not cause

the burden to fall on the Commissioner to further develop the record.  The record has been

sufficiently developed to make a determination.  Any argument that plaintiff was not getting

treatment because she could not afford it is inapposite.  Social Security Ruling 82-59[8] "only

---

[8] SSR 82-59 provides in relevant part (emphasis added):

Individuals with a disabling impairment which is amenable to treatment that could be
expected to restore their ability to work must follow the prescribed treatment to be found
under a disability, unless there is a justifiable cause for the failure to follow such
treatment ...

The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20 C.F.R. §
404.1530 under Title II) similarly provides:

(b) When you do not follow prescribed treatment.  If you do not follow the prescribed
treatment without a good reason, we will not find you disabled ...

Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for
declining to following prescribed treatment, none of which are present here.

20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for
declining to following prescribed treatment:

(1) The specific medical treatment is contrary to the established
teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye when
there is an impairment of the other eye resulting in a severe loss of vision
and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the
same surgery is again being recommended for the same impairment.
(4) The treatment because of the enormity (e.g. open heart surgery),
unusual nature (e.g. organ transplant), or other reason is very risky
for you; or
(5) The treatment involves amputation of an extremity, or a major
part of an extremity.

Additional acceptable reasons for declining to following prescribed treatment set forth in
SSR 82-59 are:

(1) Fear of surgery;
(2) Inability to pay for prescribed treatment;
(3) A medical source has advised against the treatment.

1   appl[ies] to claimants who would otherwise be disabled within the meaning of the Act." Roberts

2   v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  The ALJ made a specific finding that plaintiff was

3   not disabled without regard to her failure to seek treatment.  (Tr. at 15.)  Moreover, the exception

4   found in SSR 82-59 for inability to pay for prescribed treatment only applies where there has

5   been prescribed treatment.  The record of prescribed treatment in this case indicates only that

6   plaintiff was given samples of Effexor on October 13, 2001, over three months after her date last

7   insured, and that she did not seek any further treatment or fill this prescription until June 2002.[9]

8   (Id. at 91-102.)

9          More importantly, an allegation that a person was too poor to afford treatment

10  cannot stand in lieu of medical records or other sufficient proof that establishes a disability.

11  Regardless of the bona fides of a plaintiff's economic condition, proof of disability cannot be

12  based on lay speculation concerning what medical records would have shown had treatment been

13  sought.  Moreover, diagnosis of disabling depression is a complicated matter and not something

14  that a layperson can reliably self-diagnose.  A plaintiff's testimony to the existence and effect of

15  such a self-diagnosis is not reliable.  The court is not holding that a disabling condition cannot be

16  primarily predicated on records which post-date the alleged date of onset.  Nor is the undersigned

17  stating that a plaintiff's testimony is altogether irrelevant.  However, there must be some

18  significant objective and reliable evidence that a medical condition with sufficient severity

19  existed in the pertinent time period.  Ukolov v. Barnhart, 420 F.3d 1002, 1004-1005 (9th Cir.

20  2005).  The records available in this case simply do not sufficiently indicate a medical condition

21  which could ultimately support a finding of disability, or even as the ALJ found, a severe

22  impairment.  None of the records pre-date plaintiff's requested date of onset, and those that post-

23  date the requested onset up to the time disability was found, are sketchy even for that period.

24  _____

25      [9]  Plaintiff reported on June 15, 2002 that she took Effexor for several weeks (after October 13, 2001) but did not return to the clinic because she thought she was doing better.  (Id.

26  at 94.)  She also reported on July 9, 2002, that her depression was a little better, but she preferred her highs and lows and that life was boring without them.  (Id. at 92.)

1    Of the few times plaintiff was diagnosed with depression during the earlier time

2    period, the diagnosis was only moderate in nature.  Plaintiff received no directive to seek therapy,

3    and was not prescribed medication other than Effexor, for which she was given the samples

4    described above, but chose not to fill the prescription or pursue further treatment until June,

5    2002.  (Id. at 97, 93.)   Furthermore, plaintiff evidently had numerous occasions to visit the

6    doctor for various other physical ailments during the time period at issue, indicating that she had

7    the opportunity to get help for any mental problems as well, but declined to do so.

8    Although plaintiff's GAF score was reported to be 50 to 55 at times, it was 60 for

9    the previous year.  (Id. at 97.)  Furthermore, the scores were assigned in October, 2001 and June

10   and July, 2002 only, and do not properly reflect the time period at issue.

11   B.   Whether Remand for Testimony of a Medical Advisor Regarding the Disability Onset

12   Date is Required

13   Plaintiff claims that she has been disabled since May 24, 2001, when she was first

14   diagnosed with depression.  (Tr. at 166.)  Unfortunately, there are no medical records evidencing

15   that plaintiff sought treatment for these symptoms until after her onset date.  See 20 C.F.R. §

16   404.1512(c).  In fact, the practitioner who made this diagnosis did not prescribe any medication

17   for it, make any referral to a specialist, or recommend any other course of treatment for it.

18   Plaintiff's citation to Armstrong v. Commissioner, 160 F.3d 587 (9th Cir. 1998), is unavailing.

19   That case resulted in a remand for medical expert testimony to determine the onset date.

20   Nevertheless, in citing Social Security Ruling 83-20, the court noted that the determination of

21   onset date must be consistent with all available evidence and may never be inconsistent with the

22   medical evidence in the record.  Id. at 589.  Although the court noted it may be possible to assign

23   an onset date some time prior to the first recorded medical exam, such a judgment must have a

24   legitimate medical basis.  In this case, there is no basis for calling a medical expert because there

25   is almost a complete dearth of medical records regarding plaintiff's mental problems, and no

26   treatment for depression, for approximately one year after her insured status ended.

1  CONCLUSION

2              ACCORDINGLY, plaintiff's Motion for Judgment on the Pleadings or Remand is

3  DENIED, the Commissioner's Cross Motion for Summary Judgment is GRANTED, and the

4  Clerk is directed to enter Judgment for the Commissioner.

5  DATED: 1/12/07

                                          /s/ Gregory G. Hollows

6                                          _____
                                          GREGORY G. HOLLOWS
7                                          U.S. MAGISTRATE JUDGE

   GGH/076
8  Souders1638.ss.wpd

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26